NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**RIO LINDA ELVERTA COMMUNITY WATER DISTRICT, SACRAMENTO SUBURBAN WATER DISTRICT,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2018-1761, 2018-1762

---

Appeals from the United States Court of Federal Claims in Nos. 1:17-cv-00859-RHH, 1:17-cv-00860-RHH, Senior Judge Robert H. Hodges, Jr.

---

Decided: July 19, 2019

---

VICTOR MARC SHER, Sher Edling LLP, San Francisco, CA, argued for plaintiffs-appellants. Also represented by MATTHEW KENDALL EDLING.

KATHERINE WADE HAZARD, Environment and Natural Resources Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also

represented by ERIC GRANT, WILLIAM B. LAZARUS, JEFFREY H. WOOD.

_____

Before REYNA, SCHALL, and HUGHES, *Circuit Judges.*

HUGHES, *Circuit Judge.*

This is a takings case involving water contamination. Rio Linda Elverta Community Water District and Sacramento Suburban Water District filed complaints in the United States Court of Federal Claims alleging that, by contaminating the water supply in the area surrounding the former McClellan Air Force Base with hexavalent chromium, the United States committed a taking of their usufructuary interests[1] in that water. The Court of Federal Claims dismissed the complaints for lack of subject matter jurisdiction. It interpreted the complaints as only asserting a regulatory takings claim and concluded that the complaints failed to allege the facts necessary to satisfy Article III's case or controversy requirement. We hold that the Water Districts alleged a physical taking, not a regulatory taking. Because the Court of Federal Claims failed to address the Water Districts' physical takings claim, we vacate and remand for further proceedings.

I

The following is alleged in the plaintiffs' complaints and the parties' briefing on the government's motion to dismiss:

_____

[1]    A usufructuary interest is the right to use "another's property, as far as may be had without causing damage or prejudice to the owner." *Usufruct*, A Dictionary of Modern Legal Usage (2d ed. 1995).

A.

Rio Linda Elverta Community Water District and Sacramento Suburban Water District (the Water Districts) are public drinking water providers organized under the California Water Code.  The Water Districts own the usufructuary rights to the water within their aquifer, drinking wells, and transmission infrastructure which they use to supply drinking water.  The Water Districts' service areas abut the former McClellan Air Force Base.

McClellan operated from 1936 through 2001. During this time, the base used and disposed of chromate products containing hexavalent chromium (Cr6), a metallic element linked to health risks such as stomach cancer and gastrointestinal tumors.  Cr6 contamination can be caused by human activity or natural phenomena.  Between 2001 and 2008, some wells near McClellan that provided water for the Water Districts showed elevated levels of Cr6.

B.

Under the California Safe Drinking Water Act, the California Water Board enacts standards governing the maximum level of contaminants in drinking water.  When setting a maximum contamination level (MCL), the Water Board must balance public health interests with economic feasibility.  An MCL is legally enforceable, and if a municipality exceeds an MCL, the Water Board may suspend or revoke its water system operating permit. *See* Cal. Health & Saf. Code §§ 116275(f), 116625.

Although the Water Board has some discretion in setting an MCL, the lowest MCL that the Water Board is permitted to set for a particular contaminant is equal to the public health goal for that contaminant.  The public health goal is set by a separate agency and is based exclusively on public health considerations. It represents the level of contamination that presents no more than a *de minimis* risk to human health. *See* Cal. Health & Saf. Code § 116365(c).

The public health goal is aspirational.  Unlike the MCL, the public health goal is not a legally enforceable standard. *See id.*  California's public health goal for Cr6 is 0.02 parts per billion (ppb) or less in drinking water.  Prior to 2013, California did not have an MCL for Cr6.

In August 2013, the Water Board proposed a Cr6 MCL of 10 ppb.  After the requisite notice and comment period, the Water Board adopted the proposed MCL.

The Water Districts subsequently employed a hydrologist to determine the source of the Cr6 contamination in their water supply.  The hydrologist concluded that Cr6 contamination originated from the McClellan base.

On May 5, 2017, the Superior Court of California for the County of Sacramento overturned the Cr6 MCL because the Water Board had failed to conduct a proper feasibility analysis.  *See Cal. Mfrs. & Tech. Ass'n v. State Water Res. Control Bd.,* No. 34-2014-80001850, slip op. at 31 (Cal. Super. Ct. May 5, 2017).

On June 23, 2017, the Water Districts filed complaints in the Court of Federal Claims alleging that the United States committed a taking of the Water Districts' usufructuary rights by contaminating the Water Districts' water supply with Cr6.   The government moved to dismiss for lack of subject matter jurisdiction.  It argued that the Water Districts failed to allege a takings claim and that the court lacked jurisdiction given pending litigation in the United States District Court for the Eastern District of California.[2]

---

[2]    The district court litigation is ongoing and includes Federal Torts Act claims against the United States.  *See Rio Linda Elverta Cmty. Water Dist. v. United States*, No. 2:17-cv-01349 (E. D. Cal. filed June 30, 2017); *Sacramento*

The Court of Federal Claims concluded that the complaints did not satisfy the case or controversy requirement and dismissed both cases. *See Rio Linda Elverta Cmty. Water Dist. v. United States*, 136 Fed. Cl. 175 (2018); *Sacramento Suburban Water Dist. v. United States*, 136 Fed. Cl. 173 (2018). The court noted that the California courts had overturned the Cr6 MCL and that the state Water Board was reexamining the regulation factoring the cost benefit of compliance. Because the MCL was no longer enforceable, and because a regulatory takings action cannot be based on a speculative regulation, the court reasoned that the Water Districts could not establish a legally cognizable injury.

## II

We review the Court of Federal Claims' dismissal for lack of subject matter jurisdiction *de novo*. *Ont. Power Generation, Inc. v. United States,* 369 F.3d 1298, 1300 (Fed. Cir. 2004). We review findings of jurisdictional fact for clear error. *Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed. Cir. 1989). When reviewing a decision dismissing a complaint for lack of subject matter jurisdiction, "we accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *LaBatte v. United States*, 899 F.3d 1373, 1375 (Fed. Cir. 2018) (internal quotation marks omitted). The Court of Federal Claims errs as a matter of law when it dismisses a complaint for lack of subject matter jurisdiction without addressing the "issue in the complaint on . . . which [the complaint] was founded." *Hamlet*, 873 F.2d at 1417.

The Water Districts argue that, because the Cr6 contamination on the base physically invaded their water

---

*Suburban Water Dist. v. United States*, No. 2:17-cv-01353 (E. D. Cal. filed June 30, 2017).

supply, their complaints alleged a physical, not a regulatory, taking. Thus, they assert that the court misconstrued their claims and erroneously determined that there was no subject matter jurisdiction. The government makes two arguments in response.

First, it argues that even under a physical taking theory, the Water Districts failed to assert takings claims because "[a] taking must be predicated on actions undertaken by the United States," *Navajo Nation v. United States*, 631 F.3d 1268, 1274 (Fed. Cir. 2011), and the State of California—*not* the United States—promulgated the MCL.

We reject this argument. It presumes the complaints allege that takings claims arise from Cr6 contamination exceeding the MCL. But they do not. Instead, they allege a physical invasion of the Water Districts' property rights. The MCL is not the injury but the reason the Water Districts discovered the contamination.

Second, the government argues that, even if the Water Districts asserted physical takings claims, the statute of limitations precludes relief. Under the Tucker Act, the Court of Federal Claims lacks jurisdiction to hear takings claims more than six-years after they accrue. *See* 28 U.S.C. §§ 1491, 2501. Because the base closed in 2001, the government contends that the Water Districts' claims are untimely.

A cause of action does not accrue until all events needed to affix the liability have occurred and the claimant is legally entitled to assert its claims. *Catawba Indian Tribe v. United States*, 982 F.2d 1564, 1570 (Fed. Cir. 1993). For a claim to accrue, a claimant generally must know or have reason to know that the claim exists. *Holmes v. United States*, 657 F.3d 1303, 1317 (Fed. Cir. 2011). We may find accrual suspended if a plaintiff "show[s] that defendant has concealed its acts with the result that plaintiff was unaware of their existence or . . . that its injury was inherently unknowable at the accrual date." *Martinez v.*

*United States*, 333 F.3d 1295, 1319 (Fed. Cir. 2003) (*en banc*) (internal quotation marks omitted).

Determining when the Water Districts' claims accrued will require a fact intensive inquiry. Because the Court of Federal Claims is more suited to conducting such an inquiry, we remand this case back to the trial court to address this issue in the first instance.

### III

Because the Court of Federal Claims did not address the Water Districts' physical takings claims, we vacate and remand for further proceedings.

**VACATED AND REMANDED**

No costs.